IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 16, 2005

## MARIO ANTOINE LEGGS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2001-A-273    Steve Dozier, Judge**

---

**No. M2004-00756-CCA-R3-PC - Filed June 14, 2005**

---

The petitioner, Mario Antoine Leggs, appeals the denial of his petition for post-conviction relief. In this appeal, he contends that he was denied the effective assistance of counsel. In addition, he asserts that the ruling in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004), renders his sentences invalid. The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Mario Antoine Leggs.

Paul G. Summers, Attorney General & Reporter, William G. Lamberth, II, Assistant Attorney General, and Amy Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On November 29, 2001, the petitioner was convicted of theft, robbery, aggravated robbery, leaving the scene of an accident, driving on a suspended license, two counts of reckless endangerment, two counts of evading arrest, and three counts of reckless aggravated assault. State v. Mario Antoine Leggs, No. M2002-01022-CCA-R3-CD (Tenn. Crim. App., at Nashville, May 21, 2003). The trial court imposed an effective sentence of twenty-three years, eleven months, and twenty-eight days. On direct appeal, this court affirmed the convictions for theft, robbery, aggravated robbery, leaving the scene of an accident, reckless endangerment and one count of evading arrest. See id. The second count of evading arrest was reversed and dismissed based upon the insufficiency of the evidence and the sentence was modified to twenty-two years, eleven months, and twenty-nine days.

The petitioner's conviction for theft relates to an incident on October 25, 2000, in the Proffitt's department store parking lot at Rivergate Mall. As Michelle Williams was walking to her vehicle in the parking lot, "a man pulled up beside her in a car, grabbed her purse, 'ripped it off' her shoulder, and 'took off.'" Ms. Williams, who testified that she got a "quick glance" at the perpetrator's face, identified the petitioner as her assailant.

The petitioner's conviction for robbery and one of his convictions for reckless endangerment stem from a similar incident on November 3, 2000, at the same location. As Alexandra Sparrow walked across the parking lot, a man driving a brown Toyota Camry grabbed her purse. She was dragged alongside the car when her hand became entangled in the straps of her purse. Ms. Sparrow, who testified that she was able to see the driver's face in the car's mirror, identified the petitioner as the perpetrator. A UPS driver who witnessed the incident recorded the license plate number of the vehicle. The petitioner was identified as an owner of the vehicle.

The petitioner's remaining convictions are related to a series of events that occurred on November 16, 2000. As Julia Peach was putting items into her car in the Proffitt's parking lot, a man wielding a knife approached her, threatened to hurt her, and stole her purse. Shortly thereafter, Detective Ronald Bright, who knew that the petitioner was a suspect in the earlier robberies, was stopped at a red light when he noticed the petitioner's vehicle directly in front of him. When the detective activated his emergency lights and siren, the petitioner fled. During the ensuing chase, which covered approximately five miles and reached speeds in excess of ninety miles per hour, the petitioner threw Ms. Peach's purse from his car. The petitioner eventually drove his vehicle into a school bus and a tree. Three children on the bus suffered minor injuries. After the crash, the petitioner, who was also injured, fled on foot and was later apprehended. Upon his release from the hospital, the petitioner gave a statement to Detective Bright admitting his role in the offenses.

On October 20, 2003, the petitioner filed a timely petition for post-conviction relief, alleging that he had been denied the effective assistance of counsel. He claimed that his counsel was ineffective by failing to object to the state's untimely notice seeking enhanced punishment, by failing to object to the authenticity of a knife introduced at trial, by failing to adequately cross-examine Michelle Williams, by failing to request a mistrial, by failing to object during the state's closing argument, by failing to argue on appeal the denial of the motion to suppress a pretrial identification, and by failing to argue on appeal the improper application of certain enhancement factors. Following an evidentiary hearing, the post-conviction court denied relief.

At the evidentiary hearing, the petitioner testified that the state filed a notice seeking enhanced punishment only one week prior to his trial and that his counsel failed to object to the late-filed notice. The petitioner stated that although counsel requested a continuance, the request was not based upon the late-filed notice. The petitioner also complained that while his counsel filed a motion seeking severance of the offenses, he did not seek an interlocutory appeal of the denial of the motion. He asserted that his counsel also failed to insist upon the use of the appropriate balancing test when asking the trial court to rule on the motion to sever.

The petitioner testified that his trial counsel also failed to object to the admission into evidence of a knife that had not been properly authenticated and for which the chain of custody had not been properly established. He claimed that the victim of the aggravated robbery never identified the knife as that used during the robbery and that the knife did not match the description the victim gave to police. The petitioner also contended that trial counsel should have asked for a mistrial when one of the jurors fell asleep during the testimony regarding the knife. He stated that even though his trial counsel was informed of the sleeping juror, he did nothing.

The petitioner testified that trial counsel should have questioned Michelle Williams about inconsistencies between the testimony she provided at the preliminary hearing and that she provided at trial. He claimed that Ms. Williams earlier testified that she had only seen the side of her assailant's face and that the feature she most clearly recalled was an earring while, in contrast, she testified at trial that she was able to identify the petitioner by his eyes. The petitioner acknowledged, however, that trial counsel pointed out the inconsistency in his closing argument and in his brief to this court on direct appeal.

The petitioner also contended that the state engaged in improper closing argument and that his trial counsel was ineffective by failing to object to the remarks. He claimed that the prosecutor improperly commented on the trial tactics of his counsel and that his counsel should have objected and asked for a curative instruction. The petitioner acknowledged, however, that trial counsel did question the propriety of the state's closing argument in his motion for a new trial and on appeal.

The petitioner complained that although his trial counsel filed a motion to suppress the pretrial identification by one of the victims, he failed to preserve the issue for appellate review by omitting the issue from his motion for a new trial. He pointed out that this court deemed the issue waived on direct appeal. The petitioner also argued that his counsel was ineffective by failing to contest the length of his individual sentences on direct appeal. He claimed that the trial court misapplied certain enhancement factors and that his trial counsel should have challenged them on appeal.

Trial counsel, as a witness for the state, testified that he filed an unsuccessful motion seeking suppression of the pretrial identification of the petitioner by two of the victims. He explained that he did not challenge the chain of custody as to the knife because he felt the more important point to be made was that Ms. Peach could not say that it was the knife used in the robbery. He stated, "What I wanted to show was that, maybe, Ms. Peach was not being credible in her testimony. She was go[ing] to be the [s]tate's key witness. I felt like making her look less credible to the [j]ury was more important that simply excluding . . . the knife itself."

Trial counsel denied that a juror slept during the trial, pointing out that the juror "would lean his head back and close his eyes. . . . I noticed he did that often; and he wasn't sleeping . . . because he was moving, he was thinking." Trial counsel further commented that he did not raise the sentencing issue on appeal because he did not believe that the trial court had erred.

-3-

While trial counsel admitted that he could have used more time to prepare for trial, it was his opinion that he had performed adequately given the relatively short time frame. He explained that he was appointed only six weeks prior to trial and that the trial court refused to permit a continuance because the petitioner had filed a written demand for a speedy trial and had specifically asked to be tried as soon as possible.

Trial counsel conceded that he did not raise the issue of the pretrial identification of the petitioner in his motion for a new trial. It was his opinion that the issue lacked merit. He stated that he raised the issue on appeal only because the petitioner asked him to do so.

In an extensive written order, the post-conviction court concluded that the petitioner had not been deprived of the effective assistance of counsel. The court first determined that the petitioner was not prejudiced by trial counsel's failure to object to the late-filed notice seeking enhanced punishment because he was sentenced as a Range I offender. The post-conviction court also concluded that the petitioner failed to establish that he was prejudiced by any deficiency in trial counsel's performance with regard to the severance issue because this court held on direct appeal that the trial court did not err by refusing to sever the offenses. The post-conviction court ruled that trial counsel's decision not to challenge the chain of custody of the knife and to instead focus on impeaching the testimony of Ms. Peach qualified as a strategic decision. The court also observed that a sufficient chain of custody had been established at trial. The court held that trial counsel was not deficient in his questioning of Ms. Williams and that he thoroughly cross-examined the witness regarding her pretrial description of her assailant. It also determined that the petitioner failed to establish that he was prejudiced by either trial counsel's failure to object to the state's closing argument or by trial counsel's failure to raise on appeal the denial of his motion to suppress. Finally, the post-conviction court concluded that trial counsel was not ineffective for failing to present the sentencing issue on appeal, observing that the petitioner's sentences "were within the applicable range."

I.

In this appeal, the petitioner asserts that his counsel was ineffective by (1) failing to cross-examine Ms. Williams regarding her inconsistent descriptions of her assailant; (2) failing to object to the state's closing argument; (3) failing to object to the late-filed notice seeking enhanced punishment; (4) failing to require the trial court to apply the appropriate balancing test with regard to the severance issue; (5) failing to object to the chain of custody of the knife identified by Ms. Peach; (6) failing to request a mistrial when a juror fell asleep; (7) failing to challenge on appeal the trial court's denial of the motion to suppress; and (8) failing to challenge on appeal the trial court's application of certain enhancement factors.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to

render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997).

While the petitioner has made myriad complaints regarding trial counsel's performance, he did not produce any proof of prejudice at the evidentiary hearing. He claimed that trial counsel failed to effectively cross-examine Ms. Williams regarding inconsistencies in her description of her assailant but he did not present any statements at the evidentiary hearing that are so inconsistent as to warrant the grant of a new trial on grounds of ineffective assistance of counsel. In Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990), this court placed the burden on the post-conviction

petitioner to produce that testimony at the evidentiary hearing which he contends may have been helpful at the trial. No one was called to corroborate the claim that Ms. Williams had made glaringly inconsistent statements. Further, the record establishes that trial counsel cross-examined Ms. Williams about any perceived inconsistencies in her descriptions of the perpetrator.

With regard to the petitioner's contention that trial counsel was ineffective by failing to object to the state's closing argument, this ground qualifies as having been previously determined. Under the Post-Conviction Procedure Act, a claim which has been previously determined cannot be a basis for post-conviction relief. See Tenn. Code Ann. § 40-30-106(h) (2003). "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Id. This court reviewed the propriety of the state's closing argument on direct appeal and concluded that "[t]he [petitioner] has not demonstrated that the argument of the prosecutor, given the strength of the [s]tate's case, affected the jury's verdict to his prejudice." Mario Antoine Leggs, slip op. at 8. The petitioner is not entitled to relief on this issue.

As indicated, the petitioner also claims that his counsel was ineffective by failing to object to the late-filed notice seeking enhanced punishment. Trial counsel testified that the notice was only "a couple of days late" and that he had already been made aware that the state was seeking punishment outside Range I. He stated that he chose not to object because he was not surprised by the notice and because he was prepared to go to trial. The post-conviction court not only accredited the testimony of trial counsel but also ruled that the petitioner was not prejudiced because he was sentenced as a Range I offender.

Our supreme court has held that prejudice must be established before a late-filed notice seeking enhanced punishment will be rendered invalid. In this case, trial counsel testified that the untimely filing of the notice did not prejudice the petitioner because trial counsel was already aware that the state intended to seek a Range II sentence. Moreover, even if trial counsel should have requested a continuance on the basis of the late-filed notice, it is incumbent upon the petitioner to establish that he was prejudiced. The petitioner was sentenced within Range I, the same range that would have been applicable if no notice was filed or if the notice had been ruled invalid. See generally State v. Carter, 121 S.W.3d 579 (Tenn. 2003) (holding that a defendant is entitled to a Range I sentence where the notice seeking enhanced punishment is invalid). Because the petitioner was not sentenced to an enhanced term, he is not entitled to relief on this issue.

The petitioner also contends that counsel was ineffective for failing to require the trial court to apply the appropriate balancing test when considering his motion to sever the offenses. The record establishes that trial counsel filed a motion to sever the offenses well in advance of the trial and that the motion was denied by the trial court. Trial counsel challenged the denial of the motion to sever in his motion for a new trial and in the direct appeal to this court. On appeal, this court ruled that although the trial court erred by consolidating the November 16 offenses with the offenses committed during the other two episodes, the error was harmless because the improper consolidation did not "affirmatively appear[] to have affected the trial." Mario Antoine Leggs., slip op. at 7.

-6-

Under these circumstances, it is our view that the petitioner has failed to establish that he was prejudiced by any deficiency of his counsel.

The petitioner also complains that his trial counsel was ineffective for failing to challenge the chain of custody of a knife discovered in the petitioner's car after his arrest. Trial counsel acknowledged that he did not challenge the chain of custody, explaining that he believed that the better strategy was to use the opportunity to question the credibility of the witness. The post-conviction court accredited trial counsel's testimony and determined that the decision qualified as a reasonable trial strategy. The court also ruled that the trial record demonstrated that the chain of custody had been properly established.

In our view, the evidence does not preponderate against the findings of the post-conviction court. In Hellard v. State, our supreme court held that perfect representation is not required and that trial counsel's performance should not be measured by hindsight:

> "Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel."

629 S.W.2d 4, 9 (Tenn. 1982) (quoting Robinson v. United States, 448 F.2d 1255, 1256 (8th Cir. 1971)). Our high court, quoting United States v. DeCoster, 487 F.2d 1197, 1201 (1973), ruled that appellate courts should not "'second guess strategic and tactical choices made by trial counsel'" and that it is only "'when counsel's choices are uninformed because of inadequate preparation, a defendant is denied the effective assistance of counsel.'" Id. The high court explained as follows:

> It cannot be said that incompetent representation has occurred merely because other lawyers, judging from hindsight, could have made a better choice of tactics. As former trial lawyers, we know that a criminal trial is a very dramatic, vibrant and tense contest involving many variables and that counsel must make quick and difficult decisions respecting strategy and tactics which appear proper at the time but which, later, may appear to others, or even to the trial lawyer himself, to have been ill considered.

Id. at 9-10 (citation omitted). Because trial counsel's decision to concentrate on the credibility of the witness rather than the chain of custody of the knife qualifies as a reasonable trial strategy, the petitioner is not entitled to relief on this issue.

The petitioner next claims that his trial counsel was ineffective by failing to request a mistrial when a juror was sleeping during the trial. At the evidentiary hearing, trial counsel testified that the petitioner pointed out a juror that he believed was falling asleep. According to trial counsel, closer observation revealed that the juror was not sleeping and was only closing his eyes periodically. He stated that the juror's eyelids continued to move and he sometimes moved his head. Trial counsel recalled that the juror examined every piece of physical evidence and, in his opinion, was listening with his eyes closed during certain portions of the testimony. He stated that the juror never slumped

over in his chair and that, other than his closed eyes, there was no indication that he was sleeping. The post-conviction court accredited the testimony of trial counsel. The petitioner called no other witnesses and put on no proof that the juror was sleeping. Under these circumstances, it is our view that the petitioner is not entitled to relief on this issue.

The petitioner also contends that his trial counsel was ineffective by failing to challenge the trial court's denial of his motion to suppress a pretrial identification in the motion for a new trial. Trial counsel testified that he did not challenge the ruling because he did not believe the issue had merit. He stated that the witnesses' in court identification of the petitioner made it unlikely that a challenge to the pretrial identification procedures would have been successful. The post-conviction court ruled that the petitioner failed to establish prejudice.

In Neil v. Biggers, the United States Supreme Court established a two-part analysis to assess the validity of a pretrial identification. 409 U.S. 188, 198-99 (1972). First, trial courts must determine whether the procedure used to obtain the identification was unduly suggestive. Id. at 198. A violation of due process has occurred if the identification procedure is so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Id. If a court finds that the identification procedure was unduly suggestive, the court must determine whether, under the totality of the circumstances, the identification is nevertheless reliable. Id. at 199; State v. Brown, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990). This standard was adopted by our supreme court in Bennett v. State, 530 S.W.2d 511, 512-15 (Tenn. 1975). A finding that the pretrial identification was unreliable will also require the exclusion of a subsequent in-court identification by the same witness. State v. Philpott, 882 S.W.2d 394, 400 (Tenn. Crim. App. 1994). Factors to be considered are as follows:

(1) the opportunity of the witness to view the criminal at the time of the crime;
(2) the witness' degree of attention at the time of the crime;
(3) the accuracy of the witness' prior description of the criminal;
(4) the level of certainty demonstrated at the confrontation; and
(5) the time elapsed between the crime and the confrontation.

Neil, 409 U.S. at 199; see also Philpott, 882 S.W.2d at 400.

In this case, Ms. Williams and Ms. Sparrow each identified the petitioner as the perpetrator from a photographic lineup. Both victims had seen the petitioner at a close range and both described the petitioner's eyes as particularly memorable. At trial, both Ms. Williams and Ms. Sparrow identified the petitioner in court as the perpetrator. The Neil factors favor the admission of the identifications. Thus, no prejudice resulted from trial counsel's failure to challenge the trial court's ruling in the motion for a new trial. In consequence, the petitioner is not entitled to relief.

The petitioner also complains that counsel was ineffective by failing to challenge the application of certain enhancement factors on appeal. Trial counsel testified that he did not challenge the application of the factors because he believed that they were appropriate. The post-conviction court ruled that the sentences were in the appropriate range. In our view, the petitioner has failed to establish how he was prejudiced by counsel's failure to challenge the application of two

enhancement factors to two of the convictions. Even if this court had concluded that the factors were improperly applied, the sentence would not necessarily have been modified. See, e.g., State v. Imfeld, 70 S.W.3d 698, 709 (Tenn. 2002) (holding that "a reduction in the length of the sentences is not warranted because several other valid enhancement factors were supported by the record"). This issue is without merit.

II.

The petitioner also contends that his sentences are invalid as a result of the holding in Blakely v. Washington, 524 U.S. ___, 124 S. Ct. 2351 (2004). The state submits that the Blakely rule cannot be applied retroactively to convictions that are already final.

This court had previously held that the United States Supreme Court's opinion in Blakely called into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in Apprendi v. New Jersey, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. The Court observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 2537. Finally, the Court concluded that "every defendant has a right to insist that the prosecutor prove to a jury [beyond a reasonable doubt] all facts legally essential to the punishment." Id. at 2543.

Recently, however, in State v. Edwin Gomez and Jonathan S. Londono, No. M2002-01209-SC-R11-CD, slip op. at 25 (Tenn. April 15, 2005), a majority of our supreme court held that "[u]nlike the statutes at issue in Blakely and Booker, a judicial finding of an enhancement factor in Tennessee does not affect the range of punishment to which a defendant is exposed." The Gomez majority concluded that the 1989 Sentencing Act does not violate the Sixth Amendment. Moreover, this court had already concluded that Blakely did not apply retroactively to collateral attacks for prior convictions and sentences. See Alfio Orlado Lewis v. State, No. M2004-01282-CCA-R3-PC (Tenn. Crim. App., at Nashville, Mar. 16, 2005); Donald Branch v. State, No. W2003-03042-CCA-R3-PC (Tenn. Crim. App., at Jackson, Dec. 21, 2004). In consequence, the petitioner is not entitled to relief.

Accordingly, the judgment of the post-conviction court is affirmed.

_____<br>
GARY R. WADE, PRESIDING JUDGE

-9-